Filed 11/19/20  P. v. Howard CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, Plaintiff and Respondent, v. KRISTOPHER DEVONTE HOWARD, Defendant and Appellant. | F078412 (Kern Super. Ct. No. BF172398A) **OPINION** |

### THE COURT*

APPEAL from a judgment of the Superior Court of Kern County.  Judith K. Dulcich, Judge.

Patrick J. Hoynoski, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez and Jennifer Oleska, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

* Before Peña, Acting P.J., Meehan, J. and De Santos, J.

# INTRODUCTION

Appellant/defendant Kristopher Devonte Howard was convicted after a jury trial of second degree robbery (Pen. Code, § 212.5, subd. (c))[1] and other offenses; he was sentenced to five years in prison. On appeal, he asserts the matter must be remanded for the court to consider him for pretrial diversion pursuant to section 1001.36, a statute that was enacted prior to his trial. Defendant asserts he raised the issue at his sentencing hearing, but the court abused its discretion by failing to address it. Defendant further argues the court improperly imposed a restitution fine and other fees without finding he had the ability to pay those amounts in violation of his constitutional right to due process, based on *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*). We conditionally reverse and remand pursuant to section 1001.36.

# FACTS

**Prior incident at Superior Grocers[2]**

On July 29, 2017, Trina Petterson was working at Superior Grocers. She saw defendant enter the store and take pastries, soap, toothpaste and deodorant. He walked through an empty cashier station without paying and headed for the door. Petterson intercepted defendant and asked if he was going to pay. Defendant said he did not have to pay "because his auntie owned the store and he could take anything he wanted." Petterson called the store's security officer and defendant walked outside.

Petterson testified defendant left the area but returned about 20 minutes later and said "he wanted to fight me," and he was going to "kick my ass." Defendant was "irate" and "loud," and Petterson knew something was wrong. Defendant pushed her and she pushed him back. Petterson's coworkers came to help her, they called the police, and

---

[1] All further statutory citations are to the Penal Code unless otherwise indicated.

[2] At defendant's trial for the charged offense of second degree robbery, the court admitted evidence of his prior acts pursuant to Evidence Code section 1101, subdivision (b) as relevant to intent, and common scheme or plan.

2.

defendant left again.  The police responded to the area and defendant was taken into custody.

**Prior incidents at Fastrip**

Ayman Ibrahim was the cashier at the Fastrip convenience store in Bakersfield. Ibrahim testified that he was familiar with defendant because he had been to the store three or four times.

Ibrahim testified that defendant stole items on two prior visits to the store.  The first incident occurred in May 2018, about three or four days prior to the charged offenses in this case.  During the first incident, defendant took beef jerky and chips and did not pay for the items.  Ibrahim told defendant to leave and not come back.  Defendant cursed Ibrahim, said he could take anything without paying, and left.

Ibrahim testified the second incident occurred two or three days later.  At that time, defendant walked into the store and Ibrahim told him to leave.  Defendant took chips and did not pay for them.  He again cursed Ibrahim and said he did not have to pay for them.  He left about five minutes later.

**The current offenses**

Around 3:00 a.m. on May 27, 2018, defendant returned to the same Fastrip store. Ibrahim was again behind the counter and recognized him from the prior incidents. Defendant walked directly to Ibrahim and immediately started to curse him.  Ibrahim told defendant to "get out and I told you not to come back to this store again because you steal."  Defendant refused to leave, cursed Ibrahim, and said he could take whatever he wanted without paying.

Defendant took a bag of chips.  Ibrahim told defendant to pay and he refused. Ibrahim told defendant "to get out.  He refused.  He continued on cursing me, and then he was using foul language as if, like, you know, instigating - instigating a fight, and all I told him, to get out of the store, and I told him, I said, you don't buy, you steal.  Get out

3.

of the store. · And then he opened a bag of chips, and he started eating it in front of me ….." Ibrahim thought defendant wanted to hit him.

Ibrahim again told defendant to leave and he refused. Ibrahim said he was going to call the police and defendant said he did not care. Ibrahim "told him again, please, leave the store immediately – get out of the store approximately three times" but defendant did not leave.

Ibrahim called 911 using the speaker on the telephone so defendant could hear the call. Defendant heard Ibrahim talk to the police; he cursed Ibrahim while he was on the call and used "weird language."

After Ibrahim finished the 911 call, defendant remained in the store, kept eating, and continued to curse Ibrahim. Ibrahim decided to go outside and clean the windows. He picked up a squeegee from behind the counter. As Ibrahim headed for the door, he again told defendant to leave. Defendant walked in front of him, came very close, and blocked him from leaving.

Ibrahim testified he was afraid and "terrified" of defendant and ran to the back of the store to get away from him. Defendant ran after him.

Officer Joseph Armijo, who later arrived at the store to investigate the incident, watched the store's security video and testified that it showed defendant ran towards Ibrahim and tackled him to the floor. Defendant punched Ibrahim twice in the nose and face areas. Ibrahim tried to stand up and defendant punched him in the torso.

Defendant ran out of the store with a bag of chips. Ibrahim ran after him to see where he went, then called 911 again, and reported what happened.

At 3:20 a.m., Officer Armijo arrived at the store, watched the store's security videotape, and obtained a still shot to identify defendant. Another officer found defendant about a half-mile from the store, and he was taken into custody.

Ibrahim testified that after the incident, his shoulder, neck, and back hurt, his face was numb, and his nose was swollen and bleeding. The paramedics responded and took

4.

him to the hospital.  Ibrahim later consulted a doctor because of his injuries.  He continued to be in pain for three months and had trouble breathing through one side of his nose.

## PROCEDURAL BACKGROUND

### Charges and convictions

As we will discuss below, on June 27, 2018, section 1001.36 was signed into law providing for pretrial diversion for certain defendants with mental health disorders. (*People v. Frahs* (2020) 9 Cal.5th 618, 624 (*Frahs*).)

On July 16, 2018, an information was filed that charged defendant with count 1, second degree robbery (§ 212.5, subd. (c)); count 2, assault by means likely to produce great bodily injury (§ 245, subd. (a)(4); and count 3, battery resulting in serious bodily injury (§ 243, subd. (d)), based on the May 27, 2018, incident at Fastrip and assault on Ibrahim.

As to counts 1 and 2, it was further alleged appellant caused great bodily injury upon the victim during the commission of the offense (§ 12022.7, subd. (a)).

On September 28, 2018, after a jury trial, defendant was convicted of counts 1 and 2.  The jury found the great bodily injury allegations were not true.  As to count 3, the jury found defendant not guilty of the charged offense, but guilty of the lesser included offense of misdemeanor simple battery (§ 242).

### Defendant's statement in mitigation

According to defendant's appellate briefing, his defense counsel filed a statement in mitigation on October 30, 2018, that stated defendant "has bipolar, schizophrenia, psychosis, and anxiety.  These issues could be treated with medication.  [Citation.] Mr. Howard's mental health history is further evidenced by the letter from his mother to the court, dated October 25, 2018.  [Citation.]  The letter also explains that Mr. Howard's father died when he was 5 years old and that his mother moved to Las Vegas a few years prior to the current offense, leaving Mr. Howard homeless.  [Citation.]  The probation

5.

report filed November 6, 2018, reaffirms that Mr. Howard suffers from bipolar, anxiety, and depression. [Citation.]"

**Sentencing hearing**

On November 6, 2018, the court conducted the sentencing hearing. Defense counsel requested the court place defendant on supervised felony probation because there were mitigating circumstances: defendant falsely believed he had a claim of right to the merchandise based on his prior statements, he was homeless and only took necessary items, and he was suffering from "a mental health condition that significantly reduces culpability for the crime." Counsel asserted:

> "[Defendant] suffers from several mental illnesses, again, as evidenced by his mother's letter, in that [defendant], what he needs is not prison, but he needs treatment.
>
> "Now, in June 27th of this year, *the governor did sign a new mental health bill, mental health diversion*, and I think that shows a legislative intent that instead of sending people with mental health illnesses to prison where they are not getting treated and what prisons are not meant for, *instead, the courts need to intervene and allow that person to be treated by professionals, and that is what [defendant] has requested.*"[3] (Italics added.)

Defense counsel argued defendant's prior record could be attributed to his mental health issues, and asked the court "to find the mitigating circumstances in this case" and "get another opportunity *on felony probation with mental health terms* and whatever else the Court would deem appropriate in order to protect society." (Italics added.)

The prosecutor acknowledged defendant's mental health issues but argued he had received numerous grants of probation that had failed, he did not commit offenses out of necessity, and he showed a pattern of escalating levels of violence.

---

[3] As we will discuss in issue I, *post*, defense counsel's reference is to the enactment of section 1001.36 in June 2018.

The court found one mitigating circumstance, that "there were mental health issues perhaps that [defendant] has suffered from and may have contributed to this offense," but found that circumstance was outweighed by the aggravating circumstances that his prior convictions as an adult and sustained juvenile petitions were numerous, he was on two separate grants of felony probation and three grants of misdemeanor probation when the crimes were committed, and his prior performance on probation was unsatisfactory and he continued to reoffend. The court agreed with the prosecutor that defendant was not taking basic necessities but instead committed a violent offense.

The court denied defense counsel's request for probation and sentenced defendant to the upper term of five years for count 1, second degree robbery, and stayed the terms imposed for counts 2 and 3. The court followed the recommendation in the probation report and imposed a restitution fine of $300 (§ 1202.4, subd. (b)) and suspended the parole revocation fine of $300 (§ 1202.45); and imposed court operation assessment fees of $120 (§ 1465.8; $40 per conviction), criminal conviction assessments of $90 (Gov. Code, § 70373; $30 per conviction), and a $10 crime prevention fee pursuant to section 1202.5.

The trial court also sentenced defendant in two cases where his probation had been revoked. In case No. BF169202A, the court imposed a concurrent upper term of three years and ordered defendant to pay a restitution fine of $300 (§ 1202.4, subd. (b)), a separate $300 fine since probation had been revoked (§ 1202.44) and stayed the parole revocation fine of $300 (§ 1202.45). The court also imposed a court operations assessment fee of $40 (§ 1465.8) and a criminal conviction assessment fee of $30 (Gov. Code, § 70373).

In case No. BF170445A, the court imposed another concurrent term, and ordered defendant to pay the previously imposed restitution fine of $300 (§ 1202.4, subd. (b)), court operation assessment fees of $80 (§ 1465.8), and criminal conviction assessment fees of $60 (Gov. Code, § 70373).

7.

On November 8, 2018, defendant timely filed a notice of appeal.

## DISCUSSION

**I.      Mental Health Diversion**

Defendant contends the matter must be remanded for the court to consider his eligibility for "pretrial diversion" under section 1001.36 based on his alleged mental health problems.  The People assert defendant has forfeited review of this issue.

We review section 1001.36, the procedural history of this case, and the California Supreme Court's ruling in *Frahs*, and find remand is required in this case.

### A.      Enactment of Section 1001.36

Effective June 27, 2018, "the Legislature enacted … sections 1001.35 and1001.36, which created a pretrial diversion program for certain defendants with mental health disorders.  [Citation.]"  (*Frahs, supra*, 9 Cal.5th at p. 624, fn. omitted.)

"Section 1001.36 authorizes a pretrial diversion program for defendants with qualifying mental disorders.  The statute defines ' "pretrial diversion" ' as 'the postponement of prosecution, either temporarily or permanently, at any point in the judicial process from the point at which the accused is charged until adjudication, to allow the defendant to undergo mental health treatment ....' (§ 1001.36, subd. (c).)  The stated purpose of the diversion statute 'is to promote all of the following:  [¶] (a) Increased diversion of individuals with mental disorders to mitigate the individuals' entry and reentry into the criminal justice system while protecting public safety.  [¶] (b) Allowing local discretion and flexibility for counties in the development and implementation of diversion for individuals with mental disorders across a continuum of care settings.  [¶]  (c) Providing diversion that meets the unique mental health treatment and support needs of individuals with mental disorders.' (§ 1001.35, subds. (a)–(c).)" (*Frahs, supra*, 9 Cal.5th at p. 626.)

"As originally enacted, section 1001.36 provided that a trial court may grant pretrial diversion if it finds all of the following:  (1) the defendant suffers from a

qualifying mental disorder; (2) the disorder played a significant role in the commission of the charged offense; (3) the defendant's symptoms will respond to mental health treatment; (4) the defendant consents to diversion and waives his or her speedy trial right; (5) the defendant agrees to comply with treatment; and (6) the defendant will not pose an unreasonable risk of danger to public safety if treated in the community.  (Former § 1001.36, subd. (b)(1)–(6).)  Section 1001.36 was subsequently amended by Senate Bill No. 215 (2017–2018 Reg. Sess.) (Senate Bill 215) to specify that defendants charged with certain crimes, such as murder and rape, are ineligible for diversion.  (§ 1001.36, subd. (b)(2), as amended by Stats. 2018, ch. 1005, § 1.)" (*Frahs, supra*, 9 Cal.5th at pp. 626–627.)

"If the defendant makes a prima facie showing that he or she meets all of the threshold eligibility requirements and the defendant and the offense are suitable for diversion, and the trial court is satisfied that the recommended program of mental health treatment will meet the specialized mental health treatment needs of the defendant, then the court may grant pretrial diversion.  (§ 1001.36, subds. (a), (b)(3) & (c)(1).)  The maximum period of diversion is two years.  (*Id.*, subd. (c)(3).)  If the defendant is subsequently charged with an additional crime, or otherwise performs unsatisfactorily in the assigned program, then the court may reinstate criminal proceedings.  (*Id.*, subd. (d).) 'If the defendant has performed satisfactorily in diversion, at the end of the period of diversion, the court shall dismiss the defendant's criminal charges that were the subject of the criminal proceedings at the time of the initial diversion' and 'the arrest upon which the diversion was based shall be deemed never to have occurred.' (*Id.*, subd. (e).)" (*Frahs, supra*, 9 Cal.5th at p. 627.)

### B.      *Procedural History*

On May 27, 2018, defendant committed the charged offenses

As noted above, on June 27, 2018, section 1001.36 was signed into law and became effective.

On September 20, 2018, defendant's jury trial began. Defendant did not request pretrial diversion under section 1001.36.

On September 28, 2018, defendant was convicted after the jury trial.

On November 8, 2018, the court held the sentencing hearing. Defense counsel addressed defendant's mental health issues and argued that defendant should be placed on formal supervised probation so he could receive mental health treatment. He cited the "new *mental health bill, mental health diversion*" enacted in June 2018, that showed "a legislative intent that instead of sending people with mental health illnesses to and I think that shows a legislative intent that instead of sending people with mental health illnesses to prison where they are not getting treated and what prisons are not meant for, instead, the courts need to intervene and allow that person to be treated by professionals, and that is what [defendant] has requested." The court denied his request for probation and sentenced him to prison, but did not address section 1001.36.

### C.      *The Parties' Contentions*

In the initial briefing in this case, defendant argued his convictions and sentence must be conditionally reversed and the matter remanded for the court to conduct a hearing to determine whether he should receive diversion pursuant to section 1001.36. Defendant asserted his attorney requested diversion at the sentencing hearing, and the court "failed to appreciate and exercise its discretion" under the newly enacted diversion statute because it did not specifically respond to counsel's request.

Defendant further argued that even if the court's decision to sentence him to state prison was considered an implicit denial of his request for diversion, the court still abused its discretion because there was evidence at the sentencing hearing that strongly suggested he suffered from a qualifying mental disorder that was a significant factor in the offense, and his history of prior convictions resulted from his mental health problems and delusions that he falsely believed he owned the stores, based on the testimony from the store clerks.

10.

In response, the People argued the court lacked jurisdiction to order "pretrial" diversion at the sentencing hearing because section 1001.36 was not retroactive, his case had already been "adjudicated" when the jury found him guilty, and he was no longer eligible under section 1001.36 once he was convicted at trial. "[O]nce the adjudication of guilt or acquittal is completed, the trial court lacks authority to grant pretrial mental health diversion, which is precisely what occurred in this case."

As for the merits, the People conceded defense counsel "referenced" section 1001.36 at the sentencing hearing, but argued the issue was forfeited because counsel did not "adequately" raise the issue of pretrial diversion, his statements were "insufficient" to request diversion, and "the issue was not raised." The People further argued defendant failed to present any "reliable" evidence about his mental health condition, failed to introduce testimony or evidence from a mental health profession, and defense counsel's argument was based on "unverified" and "vague" statements from defendant and his mother.

### D. Frahs

At the time of the initial briefing in this case, there was a split among appellate courts as to whether section 1001.36 was retroactive to permit remand for a diversion hearing after the defendant had been convicted and sentenced. (See, e.g., *Frahs, supra*, 9 Cal.5th at p. 631, fn. 2.) In *Frahs*, the California Supreme Court resolved the conflict and held section 1001.36 is fully retroactive to cases not yet final on appeal under certain circumstances. (*Frahs*, at p. 624.)

In *Frahs*, the defendant entered a market where he had previously tried to steal a pack of cigarettes. The owner told him to leave. The defendant exited the store, picked up rocks, and threw them at passing cars. He struck the windshield of one car, shattering the glass. He then reentered the store and grabbed some items. The store owner and his son tried to block the defendant from leaving. The defendant punched the owner in the

11.

head, and eventually pushed his way through.  The store owner and his son detained the defendant in the parking lot and called police.  (*Frahs, supra*, 9 Cal.5th at p. 625.)

The defendant in *Frahs* was charged with two counts of second degree robbery and one felony count of throwing a substance at a motor vehicle with intent to cause injury, with a prior serious felony enhancement.  (*Frahs, supra*, 9 Cal.5th at p. 625.)  The defendant testified at trial about suffering hallucinations, numerous hospitalizations, and that a conservator had once been appointed to care for him.  The defendant also testified he stopped taking his prescribed medication before the charged offenses and experienced severe hallucinations and delusions at the time.  (*Ibid.*)  A clinical and forensic psychologist testified on the defendant's behalf, stating that the defendant had been previously diagnosed with schizoaffective disorder, described the defendant as "very ill and unstable," and that he suffered a psychotic episode and was not in touch with reality at the time of the offenses.  (*Id*. at p. 625.)  After a jury trial, the defendant was convicted of two counts of robbery and sentenced to nine years in prison.  (*Id*. at pp. 625–626.)

*Frahs* explained that section 1001.36 was enacted after the defendant was convicted and sentenced, and while his appeal was pending.  (*Frahs, supra*, 9 Cal.5th at p. 626.)  *Frahs* held the inference of retroactivity in *In re Estrada* (1965) 63 Cal.2d 740 applies to section 1001.36 so that defendants with qualifying mental disorders whose cases are not yet final are entitled to limited remand for the trial court to determine whether they are eligible for mental health diversion.  (*Frahs*, *supra*, 9 Cal.5th at pp. 624–625.)  *Frahs* held "the ameliorative nature of the diversion program places it squarely within the spirit of the *Estrada* rule," and section 1001.36 applies retroactively to all cases not yet final on appeal.  (*Frahs, supra*, 9 Cal.5th at pp. 631–637.)

In reaching this conclusion, *Frahs* declined to "precisely define 'until adjudication,' as used in section 1001.36, subdivision (c) (*Frahs*, *supra*, 9 Cal.5th at p. 633, fn. 3), but rejected the People's argument that applying the statute retroactively "to cases after adjudication would risk potentially 'undermining the legitimacy' of a

12.

jury's verdict," particularly if the defendant testified before the jury and was still found guilty. (*Id.* at p. 636.) "But even if we were to assume some such overlap in a subset of the cases to which the diversion statute may apply (the statute does not define the term 'significant factor,' and we have no occasion here to do so), the more fundamental fact is that it would not provide a clear indication that the statute was not intended to apply retroactively. The Legislature could well have intended to allow judges to decide under the statute whether a defendant's mental disorder was a 'significant factor in the commission of the charged offense' [citation] even after a verdict in which a mental health defense had been presented but rejected by the trier of fact." (*Ibid.*)

*Frahs* also rejected the People's argument that section 1001.36 was not retroactive "because it would be awkward to apply the scheme after adjudication" and "language in the statute providing that diversion be made 'pretrial' would have to be ignored." (*Frahs, supra*, 9 Cal.5th at p. 636.) "The potential logistical problems identified by the People in providing defendants with a diversion eligibility hearing after conviction, however, do not provide a sufficient basis to deny defendants the benefit of a hearing altogether. [Citation.] Although applying section 1001.36 retroactively may be somewhat challenging, we remain optimistic that 'the courts involved can implement [it] without undue difficulty.' [Citation.]" (*Id.* at pp. 636–637.)

*Frahs* next turned to the potential remedy and held a limited remand was appropriate. (*Frahs, supra*, 9 Cal.5th at p. 637.) In doing so, *Frahs* rejected the People's argument that the defendant had to demonstrate that he satisfied all six factors of statutory eligibility before an appellate court could remand for a hearing under section 1001.36. (*Frahs*, at pp. 637–638.) *Frahs* held that "imposing such a high bar in the posture of proceedings such as these would be unduly onerous and impractical. When, as here, a defendant was tried and convicted before section 1001.36 became effective, the record on appeal is unlikely to include information pertaining to several eligibility

13.

factors," while other factors, such as waiving speedy trial rights, would no longer apply. (*Id*. at p. 638.)

*Frahs* next rejected the People's claim that "a remand would be pointless because the trial court has already made findings that cast defendant as unsuitable for diversion. The People emphasize the trial court's determination in the proceedings below that there were no 'significant mitigating factors' that weighed in favor of striking defendant's prior enhancement. [Citations.] Thus, the argument goes, the trial court has already concluded that defendant knew his actions were illegal [citation] and was not 'suffering from a mental … condition that significantly reduced culpability for' his crimes [citation] – and therefore would find defendant ineligible for diversion on remand. But we agree with defendant that these findings do not conclusively establish that a remand would be futile." (*Frahs, supra*, 9 Cal.5th at pp. 638–639.) *Frahs* held the trial court could find that the criteria for diversion are satisfied "even if that court believed defendant's mental disorder did not significantly reduce his *culpability* for the crimes." (*Id*. at p. 639.)

*Frahs* also rejected the People's argument that diversion and probation were similar, and "that by being ineligible for probation, defendant would also be ineligible for diversion because he would pose an unreasonable risk of danger to public safety if treated in the community. [Citation.]" (*Frahs, supra*, 9 Cal.5th at p. 639.) *Frahs* held "the Legislature left it to trial courts to make fact-specific evaluations of risk under section 1001.36, subdivision (b)(1)(F). *If the Legislature had intended to make all defendants who are ineligible for probation also ineligible for diversion, it could have easily said so* …. Moreover, a defendant may be ineligible for probation for numerous reasons other than being found to be an unreasonable risk of danger of public safety. [Citation.] … The trial court made no finding regarding whether defendant would pose an unreasonable risk of danger to public safety if treated in the community, and we decline to interpret its ruling in such a manner." (*Ibid*., italics added.)

Finally, *Frahs* rejected the People's claim that a defendant was "procedurally barred from obtaining relief because his case has already been adjudicated. [T]he statute's definition of ' "pretrial diversion" ' as the postponement of prosecution at any point of the judicial process 'until adjudication' [citation] does not prevent the statute from applying retroactively. By definition, a statute applies 'retroactively' to cases already past the procedural point at which the new law ordinarily applies – here, cases that have already been adjudicated but are not yet final on appeal. At the time section 1001.36 became effective, defendant's case was adjudicated but the judgment was not yet final. Accordingly, he is entitled to the benefits of the statute's retroactive application." (*Frahs, supra*, 9 Cal.5th at p. 640.)

*Frahs* concluded that "a conditional limited remand for the trial court to conduct a mental health diversion eligibility hearing is warranted when, as here, the record affirmatively discloses that the defendant appears to meet at least the first threshold eligibility requirement for mental health diversion – the defendant suffers from a qualifying mental disorder [citation]." (*Frahs, supra*, 9 Cal.5th at p. 640.) *Frahs* determined the evidence in its record appeared to support the first of the statute's threshold eligibility requirements, and the evidence also appeared to support one additional requirement, and such evidence "suffices to make a conditional limited remand appropriate here." (*Ibid.*)

*Frahs* conditionally reversed defendant's convictions and sentence "with the following instructions for the trial court in considering defendant's eligibility for diversion under section 1001.36: 'If the trial court finds that [the defendant] suffers from a mental disorder, does not pose an unreasonable risk of danger to public safety, and otherwise meets the six statutory criteria (as nearly as possible given the postconviction procedural posture of this case), then the court may grant diversion. If [the defendant] successfully completes diversion, then the court shall dismiss the charges. However, if the court determines that [the defendant] does not meet the criteria under section 1001.36,

15.

or if [the defendant] does not successfully complete diversion, then his convictions and sentence shall be reinstated.' [Citation.]" (*Frahs, supra*, 9 Cal.5th at pp. 640–641.) In doing so, *Frahs* expressed "no view concerning whether defendant will be able to show eligibility on remand or whether the trial court should exercise its discretion to grant diversion if it finds him eligible." (*Id*. at p. 641.)

### E.     Subsequent Briefing

In light of *Frahs*, we requested additional briefing from the parties on its impact to the facts of this case. Defendant acknowledges that retroactivity is not an issue here since section 1001.36 became effective prior to his jury trial and conviction. However, defendant argues *Frahs* still supports his appellate arguments because it shows that he made a prima facie showing at the sentencing hearing about defendant's apparent mental health problems, he was not required to prove all six eligibility factors, and the trial court even acknowledged defendant had mental health issues. Defendant further argues that based on *Frahs*, the trial court could have granted his request for diversion at the sentencing hearing even though he had already been convicted by the jury since his case was not yet final, and the proper remedy is to conditionally reverse and remand for a hearing on his eligibility for diversion.

The People assert *Frahs* has no effect on defendant's contentions since section 1001.36 was enacted prior to his jury trial and conviction. The People again assert defense counsel was required to request pretrial diversion and satisfy the statutory criteria before his trial, but forfeited the issue because he failed to request a diversion hearing and did not made a sufficient offer of proof besides his mother's unverified statements and his own self-serving claims.

### F.     Analysis

*Frahs* addressed a situation where a defendant was tried, convicted, and sentenced before section 1001.36 was enacted in June 2018, and held the defendant could raise the

issue on appeal, and remand was appropriate since the statute was fully retroactive and his case was not yet final on appeal. (*Frahs, supra*, 9 Cal.5th at p. 624.)

In contrast to *Frahs*, defendant's jury trial began on September 20, 2018, three months after section 1001.36 was effective, but defendant never requested pretrial diversion. At the November 8, 2018, sentencing hearing, however, defense counsel asserted defendant suffered from several mental health problems that contributed to his commission of the past and current offenses, and requested the court to place him on formal supervised felony probation so he could receive mental health assistance.

In making these arguments, defense counsel did not cite the statute by its section number but clearly addressed section 1001.36 when he argued: "Now, in June 27th of this year, *the governor did sign a new mental health bill, mental health diversion*, and I think that shows a legislative intent that instead of sending people with mental health illnesses to prison where they are not getting treated and what prisons are not meant for, *instead, the courts need to intervene and allow that person to be treated by professionals, and that is what [defendant] has requested*." (Italics added.)[4]

Based on defense counsel's argument, we find defendant did not forfeit this issue. While he did not recite the code section, counsel still advised the court that he was relying on the newly enacted section 1001.36 when he argued defendant should be placed on probation and receive professional mental health treatment instead of being sentenced to prison. As noted by the People, defense counsel did not specifically ask the court for a hearing pursuant to section 1001.36, and the record is silent as to why counsel failed to do so. At the time of defendant's sentencing hearing, however, there were conflicting opinions as to whether the provisions of section 1001.36 were prospective or retroactive. (See, e.g., *Frahs, supra*, 9 Cal.5th at p. 631, fn. 2.)

---

[4] As we discuss in issue I, defense counsel's reference is to the enactment of section 1001.36 on pretrial diversion.

The record suggests that both defense counsel and the court believed section 1001.36 was inapplicable to defendant's case. In any event, the court never addressed defendant's request under section 1001.36 or rejected the request based on the statutory factors.

The People argue defense counsel failed to present sufficient evidence to support a request under section 1001.36 because defendant's sentencing statement was based on his own statements and his mother's unverified statements. However, *Frahs* rejected the People's argument that the defendant had to demonstrate that he satisfied all six factors of statutory eligibility before an appellate court could remand for a hearing under section 1001.36. (*Frahs, supra*, 9 Cal.5th at pp. 637–638.) The entirety of the record affirmatively discloses defendant appears to meet at least the first threshold eligibility requirement for mental health diversion. The store clerks testified about defendant's repeated insistence that he had an ownership right in the two businesses to take whatever he wanted. Defendant's statement in mitigation stated he had "bipolar, schizophrenia, psychosis, and anxiety" that could be treated with medication.

" 'Defendants are entitled to sentencing decisions made in the exercise of the "informed discretion" of the sentencing court. [Citations.] A court which is unaware of the scope of its discretionary powers can no more exercise that "informed discretion" than one whose sentence is or may have been based on misinformation regarding a material aspect of a defendant's record.' [Citation.] In such circumstances, we have held that the appropriate remedy is to remand for resentencing unless the record 'clearly indicate[s]' that the trial court would have reached the same conclusion 'even if it had been aware that it had such discretion.' [Citations.]" (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391.)

The People assert remand would be an idle act in this case, as found in *People v. Jefferson* (2019) 38 Cal.App.5th 399. In that case, the defendant argued on appeal that he was entitled to remand for the court to consider diversion under section 1001.36, based

18.

on evidence about his mental health problems that was introduced at his sanity trial. *Jefferson* held remand would be an idle act based on the trial court's findings when it denied his request to dismiss his two prior strike convictions. *Jefferson* noted that the trial court reviewed the extensive evidence about the defendant's mental health history that was introduced at the trial, and "the court expressly stated on the record: " '[W]hatever mental or physical condition the defendant may have been suffering from had no bearing whatsoever on his conduct*, and therefore, had no ability to reduce his culpability for the crimes he was convicted of in this case.' (Italics added.)" (*Jefferson*, at p. 408.) Based on these findings, *Jefferson* held "the trial court clearly indicated defendant's alleged mental health disorder was not a significant factor in his commission of the charged offenses, making him ineligible for diversion. Thus, remanding the matter to the trial court would be an idle act. [Citations.]" (*Id*. at pp. 408–409.)

In this case, the People assert that even if defense counsel raised and preserved a request for diversion, the record shows any remand would be futile based on the court's statements at the sentencing hearing, and decision to deny probation and impose a prison term. At the sentencing hearing, the court acknowledged the mitigating circumstance that "there were mental health issues perhaps that [defendant] has suffered from and may have contributed to this offense," but denied probation and imposed a prison term because it found the one mitigating factor was outweighed by aggravating circumstances that his prior convictions as an adult and sustained juvenile petitions were numerous, he was on two separate grants of felony probation and three grants of misdemeanor probation when the crimes were committed, and his prior performance on probation was unsatisfactory and he continued to reoffend.

*Frahs* rejected arguments similar to those raised by the People herein, that by concluding there were no mitigating circumstances, "the court necessarily reached the conclusion that any mental disorder or illness that [defendant] suffers from was not a significant factor in the commission of the offense." *Frahs* held "these findings do not

19.

conclusively establish that a remand would be futile." (*Frahs, supra*, 9 Cal.5th at p. 639.) Rather, "the trial court could find that th[is] criteri[on] for diversion [is] satisfied even if that court believed defendant's mental disorder did not significantly reduce his *culpability* for the crimes." (*Ibid.*) *Frahs* also rejected the argument that being statutorily ineligible for probation similarly rendered a defendant ineligible for diversion since the court in that case "made no finding regarding whether defendant would pose an unreasonable risk of danger to public safety if treated in the community, and we decline to interpret its ruling in such a manner." (*Ibid.*)

In contrast to *Jefferson*, we cannot say that remand would be an idle act as a result of the court's denial of probation and finding of aggravating circumstances. Based on the unique circumstances of this case, a conditional limited remand is necessary to allow the trial court to determine whether defendant suffers from a mental disorder that qualifies him for diversion. If the court determines he suffers from a qualifying mental disorder, it must then decide whether to grant him pretrial mental health diversion. However, if the court determines that defendant does not meet the criteria under section 1001.36, or if defendant does not successfully complete diversion, then his convictions and sentence shall be reinstated. (*Frahs, supra*, 9 Cal.5th at pp. 640-641.) As in *Frahs*, "[w]e express no view regarding whether defendant will be able to show eligibility on remand or whether the trial court should exercise its discretion to grant diversion if it finds him eligible." (*Id*. at p. 641.)

## II.     The Fines, Fees, and Assessments

Defendant relies on *Dueñas* and argues the court improperly imposed three restitution fines of the statutory minimum amount of $300, "totaling $900, under … section 1202.4 and assessments of $180 under Government Code section 70373 and of $240 under … section 1465.8" without determining his ability to pay in violation of his due process rights. Defendant asserts he did not forfeit review of the *Dueñas* issues

because the case had not yet been decided at the time of his sentencing hearing. The People disagree.

In *Dueñas*, the court held the assessments under section 1465.8 and Government Code section 70373 may be "imposed only on those with the means to pay them" (*Dueñas, supra*, 30 Cal.App.5th at pp. 1168–1169, fn. omitted), and "that although the trial court is required by ... section 1202.4 to impose a restitution fine, the court must stay the execution of the fine until and unless the People demonstrate that the defendant has the ability to pay" (*id.* at p. 1172; accord, *People v. Castellano* (2019) 33 Cal.App.5th 485, 489–490 [following *Dueñas* but clarifying that "a defendant must in the first instance contest in the trial court his or her ability to pay the fines, fees and assessments to be imposed and at a hearing present evidence of his or her inability to pay the amounts contemplated by the trial court"]; contra, *People v. Allen* (2019) 41 Cal.App.5th 312, 325–330 [rejecting the defendant's *Dueñas*-based due process claim and her equal protection claim]; *People v. Hicks* (2019) 40 Cal.App.5th 320, 326–329, review granted Nov. 26, 2019, S258946 [rejecting *Dueñas's* due process analysis]; *People v. Aviles* (2019) 39 Cal.App.5th 1055, 1061 [disagreeing with *Dueña's* due process analysis and concluding constitutional challenges to fines, fees and assessments should be made under the Eighth Amendment's excessive fines clause].)[5]

We conclude it is unnecessary to reach defendant's *Dueñas* arguments given remand of this matter for further proceedings under section 1001.36 and *Frahs*. To the extent that defendant believes *Dueñas* entitles him to any relief, he may, if he so chooses, request such relief on this issue in the trial court in the first instance. (*People v. Castellano, supra*, 33 Cal.App.5th at pp. 489–491.)

---

[5] The California Supreme Court is currently considering whether trial courts must consider a defendant's ability to pay before imposing or executing fines, fees, and assessments; and if so, which party bears the applicable burden of proof. (See *People v. Kopp* (2019) 38 Cal.App.5th 47, 94-98, review granted Nov. 13, 2019, S257844.)

## DISPOSITION

The judgment is conditionally reversed and remanded for an eligibility determination under section 1001.36.  In accordance with *Frahs, supra*, 9 Cal.5th at page 641, " '[i]f the trial court finds that [defendant] suffers from a mental disorder, does not pose an unreasonable risk of danger to public safety, and otherwise meets the six statutory criteria (as nearly as possible given the postconviction procedural posture of this case), then the court may grant diversion.  If [defendant] successfully completes diversion, then the court shall dismiss the charges.  However, if the court determines that [defendant] does not meet the criteria under section 1001.36, or if [defendant] does not successfully complete diversion, then his convictions and sentence shall be reinstated.' [Citation.]"